# UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 1:16-bk-01897-HWV |
| Mechanicsburg Fitness, Inc. | : | |
|     Debtor | : | |
| | : | Chapter 7 |
| Joyce S. Whiteley | : | |
|     Movant | : | |
| | : | Motion Seeking Leave to Object to |
| v. | : | Proofs of Claim; Claims No. 1 and 2 |
| | : | |
| Markian Slobodian, | : | |
|     Trustee; Respondent | : | |
| | : | |

## OPINION

In this case the court considers the Motion of Joyce S. Whiteley ("Whiteley") Seeking Leave to Object to Proofs of Claim filed by Susan J. Hildebrand ("Hildebrand") and Kevin E. Keefer ("Keefer"). Whiteley has filed a proof of claim in this case and is asserting standing to file the objections pursuant to section 502(a) of Title 11, U.S.C.[1] The Chapter 7 Trustee, Markian Slobodian (the "Trustee"), has objected to the Motion on several grounds, including lack of standing.

## I.     Jurisdiction

This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(a) and (b)(1) and (b)(2)(O).

## II.     Background

Mechanicsburg Fitness, Inc. (the "Debtor") is a defunct fitness center that initiated this chapter 7 case on April 29, 2016. Prior to filing its petition, the Debtor was defending a civil suit ("Civil Suit") brought by Keefer and Hildebrand in the Cumberland County Court of Common

---

[1] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. §101 et seq. (the "Code")

Pleas (the "State Court"). In the Civil Suit, Keefer and Hildebrand sought damages for the alleged breach of two agreements they entered into with the Debtor to provide personal training services at the Debtor's Mechanicsburg location (the "Complaint"). The Debtor filed preliminary objections ("Preliminary Objections") to the Complaint in the Civil Suit, which were overruled without opinion on April 29, 2015 (the "State Court Order"). Thereafter, the Debtor filed an answer with new matter in the Civil Suit, to which Keefer and Hildebrand responded. The Debtor filed bankruptcy on April 29, 2016 before the Civil Suit could proceed further. The Trustee was also appointed on April 29, 2016.

Following the conclusion of the section 341 meeting, the Trustee filed a Notice of Change from a No Asset Chapter 7 Case to an Asset Chapter 7 Case (the "Asset Notice"). The Asset Notice instructed creditors to file a proof of claim on or before October 6, 2017 if they wished to share in the distribution of funds.

Three timely claims were filed in response to the Asset Notice. The first was filed by Hildebrand asserting a general unsecured claim in the amount of $130,950.00 (the "Hildebrand Claim"). The basis of the Hildebrand Claim is breach of contract arising from the same facts and circumstances asserted in the Civil Suit. The second claim was filed by Keefer asserting a general unsecured claim in the amount of $283,240.00 on similar grounds to the Hildebrand Claim (the "Keefer Claim"). The third and final claim was filed by Whiteley asserting a general unsecured claim in the amount of $1,973,856.21 for money loaned (the "Whiteley Claim").

On January 19, 2018, Whiteley filed the instant Motion Seeking Leave to Object to the Claims of Hildebrand and Keefer (the "Motion"). The Trustee filed his Response to the Motion on February 5, 2018 (the "Response") and a hearing was conducted on February 6, 2018. During the hearing, and as set forth in his Response, the Trustee objected to the Motion on multiple

grounds, many of which relate to Whiteley's standing.² The Trustee also asserted that absent his refusal to pursue possible objections to certain claims, he has the exclusive right to object to proofs of claim and leave to object should generally not be granted to a third party. In addition to the foregoing, the Trustee argued that Whiteley's proposed objections to the Hildebrand and Keefer Claims are barred by the doctrines of issue preclusion, claim preclusion, and by the Rooker-Feldman Doctrine. Finally, the Trustee argued that Whiteley's proposed objections were premature and not ripe at that time because there were no assets in the case other than a potential fraudulent transfer claim against Whiteley (the "Asset"), which had not yet been brought by the Trustee.

In response to the Trustee's last argument, and to provide him with the opportunity to determine whether pursuit of the Asset was appropriate, the court continued the hearing to a future date. On April 25, 2018, the Trustee demonstrated his intent to pursue the Asset by filing an adversary complaint pursuant to sections 548 and 550 naming Whiteley as Defendant (the "Adversary Complaint"). The Adversary Complaint seeks to avoid certain pre-petition transfers and to recover the value of same from Whiteley for the benefit of the Debtor's estate.

A final hearing on the Motion was held on June 26, 2018 where additional arguments were heard. The matter is now ripe for a decision.

### III. Discussion

The Bankruptcy Code establishes an orderly and centralized liquidation process where creditors of equal priority receive ratable and equitable distributions. These distributions are designed to serve "the prime bankruptcy policy of equality of distribution among creditors of the

---

² The Trustee argues that Whiteley has no standing, is not a creditor or party in interest, has not suffered any harm that could be redressed by the Motion, does not possess any pecuniary interest that could be affected by a ruling and the matter is therefore not "ripe" and there is no "case or controversy". Each of these arguments is rooted in the concept of standing.

3

debtor." *Union Bank v. Wolas*, 502 US. 151, 161 (1991) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977)). In a chapter 7 liquidation, this translates to a pro-rata distribution of the debtor's nonexempt assets to creditors. 11 U.S.C. § 726(b). In furtherance of those objectives, the Code provides that a creditor's claim, "proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).[3] Claims that are deemed "allowed" are eligible for distributions, while claims that are not "allowed" generally do not receive distributions. 11 U.S.C. § 726.

In this case, the court is asked to determine what rights a chapter 7 creditor has to object to claims pursuant to section 502(a). This determination necessarily includes an examination of a creditor's standing under section 502(a). The meaning of section 502(a), and the rights it confers upon a chapter 7 creditor as a matter of law, is therefore the central question presented in this case. For the reasons that follow, this court concludes that Whiteley is a party in interest with the right to object to the Hildebrand and Keefer Claims pursuant to section 502(a).

**A.     Standing**

Bankruptcy standing is governed by both Article III of the Constitution and the Bankruptcy Code. The Constitution limits the judicial power of the United States to "Cases" and "Controversies." U.S. Const. art. III. "[A]n essential and unchanging part of the case-or-controversy requirement" is the doctrine of standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). To have standing under Article III, "a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged

---

[3] The full text of section 502(a) provides as follows:
   A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.
11 U.S.C. § 502(a).

4

action; and redressable by a favorable ruling." *Horne v. Flores,* 557 U.S. 433, 445 (2009). The injury need not be great, however, and "some specific, 'identifiable trifle' of injury" suffices. *Bowman v. Wilson,* 672 F.2d 1145, 1151 (3rd Cir. 1982) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 689 n. 14 (1973)). The critical question is whether a plaintiff "has 'alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Horne,* 557 U.S. at 445 (quoting *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009)).

The right to be heard in a bankruptcy case is also governed by the Bankruptcy Code. *See e.g.* 11 U.S.C. §§ 1109(b) and 502(a); see also *In re Global Indus. Tech., Inc.*, 645 F.3d 201, 210 (3rd Cir. 2011); *Mt. McKinley Ins. Co. v. Pittsburgh Corning Corp.*, 518 B.R. 307, 318 (W.D. Pa. 2014). Section 502, for example, governs the allowance of claims and interests and provides any "party in interest" with standing to object. *See* 11 U.S.C. § 502(a). Unfortunately, the Bankruptcy Code does not expressly define who qualifies as a "party in interest" for purposes of section 502. The Third Circuit Court of Appeals, however, has stated that a "party in interest" is "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *Global Indus. Tech., Inc.*, 645 F.3d at 210.[4]

Careful examination of the above principles demonstrates that the assessment for standing under Article III coincides with the test for standing as a "party in interest" under the Bankruptcy Code. Indeed, the Third Circuit has observed that "[p]ersuasive authority indicates that Article III standing and standing under the Bankruptcy Code are effectively coextensive." *Id.* at 211.

---

[4] The Third Circuit examined the issue of bankruptcy standing in the context of a creditor's ability to object to confirmation of a chapter 11 plan pursuant to 11 U.S.C. § 1109(b). This case involves a creditor's ability to object to claims pursuant to 11 U.S.C. § 502(a). However, I agree with my predecessor who observed that: "[t]here is no reason to define 'party in interest' standing more narrowly in the context of an objection to a claim than in the context of a plan objection." *In re Black, Davis and Shue Agency, Inc.*, 460 B.R. 407, 414 (Bankr. M.D. Pa. 2011).

Therefore, the relevant query for this matter is whether Whiteley has a legally protected interest that could be affected by this bankruptcy proceeding. This court has little difficulty concluding that she does.

Section 502(a) provides statutory protection to any "claim or interest, proof of which is filed under section 501 of this title" by deeming it "allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Presently, no one has objected to Whiteley's Claim, proof of which was filed under section 501. As such, Whiteley's Claim is currently deemed "allowed". This allowed claim represents Whiteley's legally protected interest in this case.[5] As indicated above, however, the inquiry does not end there. To have standing, Whiteley must also show that her legally protected interest could be affected by this bankruptcy proceeding. For the reasons that follow, this court resolves that Whiteley's legally protected interest could be affected by this bankruptcy proceeding.

Consider the application of section 726 to this case. Section 726 is the distribution section for liquidation cases. It dictates the order in which distribution of property of the estate will occur when there are funds available for distribution. *See* 11 U.S.C. § 726(a). Generally, property is first distributed among priority claimants as determined by section 507, and in the order prescribed by section 507. 11 U.S.C. § 726(a)(1). Second, subject to certain exceptions not relevant here, property is distributed among general unsecured creditors. 11 U.S.C. § 726(a)(2). When the funds available are inadequate to pay all the allowed claims in full, distributions within a particular class are made pro-rata.[6] 11 U.S.C. § 726(b).

Applying the directives of section 726 to the present case demonstrates how Whiteley's legally protected interest could be affected by this proceeding. Initially, the court observes that

---

[5] Section 502(b) and Federal Rule of Bankruptcy Procedure 3007 each provide additional statutory and legal protections to Whiteley's Claim in the event of an objection.
[6] Such is the case here. The aggregate value of the Hildebrand, Keefer, and Whiteley general unsecured claims exceeds the value of the Asset by as much as $2,138,046.21, without accounting for accrued interest or costs of suit.

the value of the Asset in this case is inadequate to pay in full the total value of the claims filed in this matter. Accordingly, any distributions that may occur in this case will be pro-rata. This observation reveals a dynamic that illustrates how Whiteley's legally protected interest could be affected by this proceeding. Specifically, as the aggregate value of all allowed priority and general unsecured claims increases, the amount available for distribution to any one of the general unsecured claims decreases. As such, the legally protected interest of every general unsecured claimant can be affected by the value and viability of every priority and other general unsecured claim. This dynamic naturally operates as an incentive for general unsecured claimants to object to the claims of priority and other general unsecured claimants. This is precisely what Whiteley seeks to do here.

Whiteley's legally protected interest and the potential for it to be affected by this bankruptcy proceeding qualifies her as a section 502(a) "party in interest" under the standard articulated by the Third Circuit Court of Appeals in *Global Industrial*.[7] This court therefore concludes that Whiteley is a party in interest with standing to object to the Hildebrand and Keefer Claims pursuant to section 502(a).

**B.     Meaning of §502(a)**

Having established Whiteley's standing as a creditor to object to the Claims, the court turns to the central question regarding the meaning of section 502(a), and the rights it confers upon a chapter 7 creditor as a matter of law. Whiteley argues that the language of the statute clearly provides her with an "unqualified right as a creditor to file objections to the . . . proofs of claim."[8] Tr. at p. 6, June 27, 2018, ECF No. 68. The Trustee, on the other hand, disagrees and argues that

---

[7] It also meets the criteria established by the Supreme Court of the United States in *Horne* and *Bowman* for standing under Article III of the United States Constitution.
[8] This position has support in the case law. See *In re C.P. Hall Co.*, 513 B.R. 540, 544 (Bankr. N.D. Ill. 2014) ("The right to object to claims that section 502(a) grants creditors . . . is unqualified.").

7

Case 1:16-bk-01897-HWV    Doc 69    Filed 11/02/18    Entered 11/02/18 14:20:29    Desc
Main Document    Page 7 of 20

section 502(a) is "not an authorization paragraph" at all. *Id.* at 42. Instead, according to the Trustee, all section 502(a) actually "says" is that "there could be a circumstance where a court may allow a creditor to object . . . . but it does not say that they have an absolute right" to do so. *Id.* The Trustee further argues that any implication in section 502(a) that a creditor may be allowed to object to a claim is subject to a chapter 7 trustee's "specific authorization and . . . duty" to object to claims pursuant to section 704(a)(5). *Id.* at 42–43. The Trustee relies exclusively upon "the way this section has been interpreted by the case law" to support this position.[9] *Id.* These arguments will be addressed in the order they are presented.

1. **The Plain Meaning of Section 502(a)**

The first canon of statutory interpretation is that a court must begin, and, where appropriate, end, with the statutory language. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3rd Cir. 2010) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (internal citations and quotations omitted). Where a "statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted). When the language of a statute is unambiguous, "the court should not consider statutory purpose or legislative history." *Philadelphia Newspapers, LLC*, 599 F.3d at 304.

---

[9] See *In re Cremo*, 557 B.R. 343 (Bankr. M.D.Pa. 2016) ("'the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee.'")(*quoting* Fed. R.Bankr. P. 3007 (Advisory Committee Note 1983); *In re Ampal-American Israel Corp.*, 545 B.R. 802 (Bankr. S.D.N.Y. 2016) (observing that "[A]bsent leave of court, the chapter 7 trustee alone may interpose objections to proofs of claim. Leave to object is not generally accorded an individual creditor unless the chapter 7 trustee refuses to object . . . and the bankruptcy court permits the creditor to object in the trustee's stead."(quoting *In re Thompson*, 965 F.2d 1136, 1147 (1st Cir. 1992)).

8

To determine whether language is unambiguous, courts should "read the statute in its ordinary and natural sense." *Id*. (citing *Harvard Secured Creditors Liquidation Trust v. I.R.S.*, 568 F.3d 444, 451 (3rd Cir. 2009). A statutory provision is ambiguous only where the disputed language is "reasonably susceptible of different interpretations." *Id*. (citing *Dobrek v. Phelan*, 419 F.3d 259, 264 (3rd Cir. 2005) (quoting *Nat'l R.R. Passenger Corp. v. Atchinson Topeka & Santa Fe Ry. Co*., 470 U.S. 451, 473 n. 27 (1985))).

With the above framework in mind, the court turns to section 502(a). As stated above, section 502(a) governs the allowance of claims and provides as follows:

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a).

Initially, the court detects no language within section 502(a) that when read in its ordinary and natural sense is susceptible to an interpretation different from the one offered by Whiteley. It may be, however, that a closer examination of the language of section 502(a) will reveal such ambiguity. Before commencing this examination, though, the court notes that there is certain language within section 502(a) that is not in dispute. For instance, it is common ground that Keefer and Hildebrand have each filed their claims under section 501, and that the Debtor is not a partnership. Accordingly, the words "proof of which is filed under section 501 of this title" and "including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title" are inconsequential to this review. The relevant language of section 502(a) in this matter is therefore limited to this: "A claim . . . is deemed allowed, unless a party in interest . . . objects." This is the language that the court will study to determine if section 502(a) is ambiguous.

9

As with the court's initial impression of section 502(a) before the inconsequential words were removed, the court again senses no ambiguity in the remaining language of the provision. It plainly provides that a claim will be considered allowed except where a "party in interest" opposes it. The term "party in interest" has already been defined as "a person or entity with a legally protected interest that could be affected by the bankruptcy proceeding" and is thus not susceptible to a different interpretation. The other component terms of section 502(a) are also not susceptible to differing interpretations.[10]

Just like the initial reading of section 502(a) and the reading of its relevant language thereafter, the court perceives no ambiguity in the component words and terms when individually read in their ordinary and natural sense. This observation does not change when these component words and terms are reassembled utilizing their common understandings. Doing so yields a reconstructed section 502(a) that reads as follows: "A right to payment is considered permitted except upon the condition that a person or entity with a legally protected interest that could be affected by the bankruptcy proceeding opposes it."

The language of section 502(a) is clear and unambiguous. It plainly authorizes a party in interest to object to any claim or interest, proof of which is filed under section 501 of the Code. Nowhere is this right made subject to any other provision of the Code or to the Trustee's refusal to pursue possible objections to certain claims.[11] Additionally, there is no

---

[10] For example, the parties do not dispute the meaning of the word "claim", which is unambiguously defined by section 101(5)(A) as including a "right to payment". Likewise, no one has expressed any confusion over the meaning of the word "objects", which in this context is a verb that is naturally understood to mean "opposes". Webster's Third New International Dictionary 1555 (2002). In the same way, the words "deemed" and "allowed" are synonymous with "considered" and "permitted." *Id*. at p. 584 and p. 58. Finally, the word "unless" is understood to mean "except upon the condition that" in the context of its use here. *Id*. at p. 2503.

[11] The court notes, however, that any such objection is subject to Federal Rule of Bankruptcy Procedure 9011. Rule 9011 will serve, among other things, to discourage creditors from presenting objections for "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation". Fed.R.Bankr.P. 9011(b)(1).

language requiring a party in interest to seek leave of court before pursuing such an objection. Indeed, the Trustee does not appear to contest these observations. He has not directed the court to any disputed language within section 502(a) that when read in its ordinary and natural sense is reasonably susceptible to a different interpretation. Nor can the court locate any such language within the provision. Plainly stated, the language of section 502(a) is entirely unambiguous in this regard. Because the language of section 502(a) is unambiguous, it is the sole function of this court to enforce it according to its terms, unless the disposition required by the text is absurd.

### 2. Disposition Required by the Text of Section 502(a)

The disposition required by the text of section 502(a) is not absurd. To the contrary, the disposition required by the text is entirely consistent with the central purpose of the bankruptcy code as it relates to creditors—equality of distribution. *Union Bank*, 502 U.S. at 161; *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990). It is also consistent with the requirement that chapter 7 cases be closed as "expeditiously as is compatible with the best interest of parties in interest." 11 U.S.C. § 704(a)(1).

Creditors, through their pre-petition relationship with a debtor, are often in the best position to evaluate the claims of other creditors and, where appropriate, promptly file objections thereto. Allowing creditors to proceed in this manner facilitates resolution of the claims reconciliation process, which is necessary to ensure prompt and equal distributions. The circumstances of this case clearly support this concept. The court also notes that the Trustee has not argued that application of the text of section 502(a) will yield absurd results. The cases cited by the Trustee also do not advance this argument. In view of the foregoing, this court concludes that the disposition required by the plain text of section 502(a) is not absurd.

11

### 3. Section 502(a) as an Authorization Paragraph

The Trustee counters the above conclusion by arguing that section 502(a) is "not an authorization paragraph" at all and that all it actually says is that "there could be a circumstance where a court may allow a creditor to object . . . but it does not say that they have an absolute right" to do so. Tr. at p. 42, June 27, 2018, ECF No. 68. In other words, the Trustee reads ambiguity into the statue because of what it does not say, rather than reading it for what it plainly says. This argument is unpersuasive. If section 502(a) was not intended to grant a party in interest the right to object to claims or interests, contrary to the literal reading of the text, then Congress could have included language to that effect. It did not. Presuming that Congress "says in a statute what it means and means in a statue what it says there", this court concludes that the failure to include such language was intentional.

The Trustee's argument encounters even greater headwinds in the face of another canon of interpretation. His contention that section 502(a) does not authorize a party in interest to object to a claim implies the existence of another Code provision that does. That is, if section 502(a) is not an authorization paragraph as the Trustee argues, then the words "unless a party in interest objects" can only be interpreted as reciting an authority provided for elsewhere in the Code. The problem with this argument is that there is no other provision in the Code that provides this authority. As such, the Trustee's interpretation of section 502(a) requires the court to construe the words "unless a party in interest objects" as inoperative and superfluous. Such a scenario violates one of the court's most basic interpretive canons which provides that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Geisinger Cmty. Med. Ctr. v. Sec'y U.S. Dept. of Health and Human Serv.*, 794 F.3d

12

383, 393 (3rd Cir. 2015) (citing *Corley v. United States*, 556 U.S. 303, 314 (2009) (alteration in original) (internal quotation marks omitted))).

In addition to ignoring one of the court's most basic interpretive canons, the Trustee's reading also strangely abandons clarity in favor of ambiguity. With a plain, non-absurd meaning in view, the court will not proceed this way. Instead, this court concludes that Congress must have intended that section 502(a) operate as an "authorization paragraph" because the key language "unless a party in interest . . . objects" would not have any purpose or meaning if it did not. The most natural reading of section 502(a), then, is that it confers an unfettered right upon chapter 7 creditors to object to the claims or interest of others.

    **4.    Section 704(5) and Interpretive Case Law**

Next, the Trustee contends that "absent his refusal to pursue possible objections to certain claims, he has the exclusive right to object to proofs of claim and leave to object should generally not be granted to a third party." Resp. Ans. at ¶2, Feb. 05, 2018, ECF No. 57. Because this court believes that the most natural reading of section 502(a) is that a creditor has an unrestricted right under section 502(a) to object to claims or interests in a chapter 7 case, the Trustee's burden to persuade the court otherwise is "exceptionally heavy". See *Patterson v. Shumate,* 504 U.S. 753, 760 (1992).

The Trustee does not rely upon the language of 502(a) to carry his burden. Instead, the Trustee relies upon "the way this section has been interpreted by the case law" to support his position. Tr. at 43, June 27, 2018, ECF No. 68. To this end, the Trustee cites two cases in support of his argument. See *In re Cremo*, 557 B.R. 343; *In re Ampal-American,* 545 B.R. 802. Review of these cases and the cases cited therein, however, exposes meaningful flaws in the reasoning

13

upon which they rest, and upon which the Trustee relies.  These decisions are therefore unpersuasive to this court.

The cases supporting the Trustee's position each follow a similar pattern.[12]  They begin by recognizing that section 502(a) unambiguously grants creditors standing to object to claims in chapter 7 cases. Next, and notwithstanding the clear mandate to end the judicial inquiry there, the cases continue their examination into the controversial realm of legislative intent and policy consideration.  No explanation is offered to justify the departure from the unambiguous text of the statute.  Thereafter, the decisions cite policy considerations described in a leading bankruptcy treatise[13] and a 1983 Advisory Committee Note to Federal Rule of Bankruptcy Procedure 3007 ("Advisory Committee Note") as sources of support for the decision to limit a creditor's right to object to a claim pursuant to section 502(a).  Some decisions supporting the Trustee's position also rely upon cases decided pursuant to pre-Code practice.  See *In re Dominelli*, 820 F.2d 313, 317 (9th Cir. 1987) (citing *Fred Reuping Leather Co. v. Fort Greene Nat'l Bank*, 102 F.2d 372, 373 (3rd Cir. 1939)); *Thompson*, 965 F.2d at 1147 (citing *Dominelli*, 820 F.2d at 317);  *In re Morrison*, 69 B.R. 586, 589 (Bankr. E.D. Pa. 1987) (citing *Fred Reuping*, 102 F.2d at 373).

The approach described above fails to show the proper respect for the words of Congress.  It ignores conventional doctrines of statutory construction and places undue emphasis on inappropriate sources such as Collier and the Advisory Committee Note.  It cannot be contested that Collier "is not part of the Code's legislative history in any meaningful sense" and should not be considered a tool of construction.  See *Midlantic Nat. Bank v. New Jersey Dept. of*

---

[12] See e.g. *In re Thompson*, 965 F.2d 1136, 1147 (1st Cir. 1992); *In re Cremo*, 557 B.R. at 347; *Ampal-American*, 545 B.R. at 809; *Pascazi v. Fiber Consultants, Inc.*, 445 B.R. 124, 128–29 (S.D.N.Y. 2011); *In re Manshul Const. Corp.*, 223 B.R. 428, 429–30 (S.D.N.Y. 1998); *In re Sinclair's Suncoast Seafood, Inc.*, 140 B.R. 588, 590, 592 (M.D. Fla. 1992).
[13] 4 *Collier on Bankruptcy* ¶502.02[2][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)("Collier").

14

*Environmental Protection*, 474 U.S. 494, 512 (1986). Nor should courts accord any significance to advisory committee notes as they are not made by Members of Congress during hearings and are not included in official Senate and House Reports. See *Kelly v. Robinson*, 479 U.S. 36, fn. 13 (1986). These sources should never be considered in the place of the plain, unambiguous text of the statute at issue.

Moreover, and in defiance of conventional doctrines of statutory construction, the decisions relied upon by the Trustee do not identify any ambiguous language in Section 502(a) before straying into the controversial realm of legislative intent and policy consideration. Nor do they conclude that the disposition required by application of the text of section 502(a) is absurd. Notwithstanding these undisputed facts, the decisions each violate the first canon of statutory construction by failing to enforce the provision according to its unambiguous terms. This error is compounded by the courts' subsequent consideration of extratextual sources such as pre-Code practice.[14] Such a practice can only be appropriate where, unlike the present case, the provision in question is ambiguous and subject to interpretation.[15] Lastly, the approach taken by these cases runs afoul of the prohibition against achieving better policy outcomes through court interpretation. Achieving a better policy outcome—if that is what the Trustee urges—is a task for Congress, not the courts. *Hartford Underwriters*, 530 U.S. at 13–14.

Based upon the foregoing, this court finds the caselaw upon which the Trustee relies unpersuasive as it fails to show the proper respect for the words of Congress and engages in meaningful and improper departures from conventional doctrines of statutory interpretation.

---

[14] "The starting point in discerning congressional intent is the existing statutory text . . . and not the predecessor statutes." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (internal citations omitted).
[15] Pre-Code practice is only applied to the construction of a provision that is subject to interpretation or contains ambiguity in the text. *Hartford Underwriters*, 530 U.S. at 10. Where "the meaning of the Bankruptcy Code's text is itself clear . . . its operation is unimpeded by contrary . . . prior practice". *Id*. (additional citations omitted).

15

### 5. Issue Preclusion, Claim Preclusion and *Rooker-Feldman*

Finally, the Trustee argues that "Whiteley's proposed objection may be barred by the doctrines of issue preclusion and claim preclusion and the Rooker-Feldman doctrine." Resp. Ans. at ¶ 25, Feb. 05, 2018, ECF No. 57. This argument misconstrues the proper application of these doctrines.

#### i. Issue Preclusion and Claim Preclusion

Under Pennsylvania law, issue preclusion applies where: (1) the issue decided in the prior adjudication was identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 147 (3rd Cir. 2007).[16] For the reasons that follow, this court concludes that the Trustee has not met his burden of proving the elements necessary to warrant application of the doctrines of issue preclusion or claim preclusion.

To begin with, the issue decided by the State Court in the Civil Suit was whether the Complaint filed by Keefer and Hildebrand against the Debtor should be dismissed with prejudice for failure to state a cause of action for breach of contract under Pennsylvania law. Ex A, Ans. at ¶ 11, Jan. 03, 2018, ECF No. 46-1. In contrast, the issue presented to this court is whether Whiteley is authorized under federal bankruptcy law to file objections to the Keefer and Hildebrand Claims in the Debtor's bankruptcy case. This issue is entirely distinct from the issue raised in the State Court. The State Court was tasked with deciding whether Keefer and Hildebrand had pled

---

[16] Similarly, the application of claim preclusion requires a defendant to demonstrate three elements: (1) a final judgment on the merits in a prior suit, (2) involving the same parties or their privies, and (3) a subsequent suit based on the same cause of action. *Sims v. Viacom, Inc.*, 544 F. App'x 99, 101 (3rd Cir. 2013) (citing *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3rd Cir.1991)).

sufficient facts to establish a viable claim against the Debtor under state law. Unlike that task, the issue before this court is whether Whiteley (not the Debtor) is authorized under section 502(a) of the Bankruptcy Code to file objections to the Keefer and Hildebrand Claims, independent of the merits or viability of those Claims. The latter has nothing to do with the former. Accordingly, the first element of issue preclusion—that the issues presented be identical—has not been established by the Trustee in this case.[17]

Additionally, it is settled law in Pennsylvania that an order denying preliminary objections is not a "final judgment" on the merits. See *Creighan v. City of Pittsburgh,* 132 A.2d 867, 870 (Pa. 1957)*; see also* Pa.R.A.P. 341(b). The State Court Order at issue in this matter involves the denial of preliminary objections and therefore does not represent a final judgment on the merits. The court notes that the Trustee has conceded this point. Tr. at p. 40, June 27, 2018, ECF No. 68. As such, it is admitted that the second element necessary to invoke the doctrine of issue preclusion—that there be a final judgment on the merits—is not met.[18]

Finally, it is not disputed that the Civil Action was stayed by this bankruptcy proceeding before discovery was commenced and before the parties otherwise had a full and fair opportunity to litigate the issue in question in that matter. Tr. at p. 40, June 27, 2018, ECF No. 68. As such, it is admitted that the fourth element necessary to invoke the doctrine of issue preclusion—that the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action—is not met.

---

[17] Similarly, the third element of claim preclusion – that the subsequent suit be based on the same cause of action – has not been met in this case.
[18] Likewise, the first element of claim preclusion – that there be a final judgment on the merits in the prior suit - is not met in this case.

### ii. Rooker-Feldman Doctrine

The doctrine of *Rooker-Feldman* likewise has no application to this matter. Here, the Trustee argues that Whiteley's Motion cannot be granted without violating the *Rooker-Feldman* doctrine because it requires this court to review and reverse the State Court Order denying the preliminary objections. This argument fails because "the narrow ground occupied by *Rooker-Feldman*" does not apply to this case. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005).

The Third Circuit Court of Appeals has observed that there are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgement; (3) that judgement was rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state court judgment. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3rd Cir. 2010) (citing *Exxon Mobil Corp.*, 544 U.S. at 291); see also *Philadelphia Entm't and Dev. Partners*, 879 F.3d 492, 500 (3rd Cir. 2018). For the reasons that follow, this court concludes that the Trustee has not met his burden of proving the elements necessary to warrant application of the *Rooker-Feldman* doctrine.

Regarding the first element, the "losing party" in the State Court Civil Suit is the Debtor Mechanicsburg Fitness, Inc. In contrast, the "federal plaintiff" (or its functional equivalent) in this matter is Whiteley, not the Debtor. Since the losing party in the State Court Civil Suit is different from the party seeking relief in this court, the *Rooker-Feldman* doctrine cannot apply here.[19]

Moreover, even if the Trustee could establish equivalence of the federal plaintiff and the party that previously lost in state court, the Trustee has also failed to establish the second and

---

[19] The Trustee has acknowledged that this element of *Rooker-Feldman* is not met. Tr. at p. 14, June 27, 2018, ECF No. 68.

fourth elements of the *Rooker-Feldman* doctrine. The fourth element is not met here because Whiteley is not inviting this court to "review and reject" the state court judgment. In this context, the Third Circuit has characterized the term "review and reject" as synonymous with "appellate review". *Great Western*, 615 F.3d at 169. The term "appellate review", in turn, is defined by the Third Circuit as any "review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law." *Id*. Stated another way, if the federal court's review does not concern the bona fides of the state court's judgment, then the federal court is not conducting an appellate review and the "review and reject" component required to invoke the *Rooker-Feldman* doctrine is not met. *Id*. In such a situation, the second element of *Rooker-Feldman* is also not met because the plaintiff is not "complaining of legal injury caused by a state court judgment because of a legal error committed by the state court." *Id*.

As set forth above, the relief sought by Whiteley in this matter is entirely distinct from the relief sought by the Debtor in the State Court Civil Matter. The former seeks permission to file objections to the Keefer and Hildebrand Claims pursuant to section 502(a) of the Bankruptcy Code while the latter sought to dismiss the Civil Suit with prejudice for failure to state a claim upon which relief could be granted under Pennsylvania law. Considering and deciding Whiteley's Motion in no way requires this court to review the proceedings already conducted by the State Court or to determine whether it reached its result in accordance with law. In other words, this court's review of Whiteley's Motion does not concern the bona fides of the State Court Order dismissing the Preliminary Objections.

Considering these facts within the context of the framework established by the Third Circuit as referenced above, this court finds that the Trustee has not proven the first, second or fourth elements necessary to invoke the *Rooker-Feldman* doctrine. Accordingly, this court

19

concludes that the doctrines of claim preclusion, issue preclusion and Rooker-Feldman do not apply to this matter.

## IV. Conclusion

Adhering to conventional doctrines of statutory interpretation, this court concludes that the clear and unambiguous language of section 502(a) authorizes a party in interest to object to any claim or interest, proof of which is filed under section 501 of the Code. Nowhere is this right made subject to any other provision of the Code or to the Trustee's refusal to pursue possible objections to certain claims. Additionally, the court finds that there is no language requiring a party in interest to seek leave of court before pursuing such an objection. Finally, this court finds that the doctrines of claim preclusion, issue preclusion, and *Rooker-Feldman* do not apply to this matter. Whiteley's Motion Seeking Leave to Object to the Claims of Hildebrand and Keefer, though unnecessary in view of these findings, will be granted for purposes of clarity.

An appropriate Order will follow.